| | |
|---|---|
| THE UNITED STATES DISTRICT COURT<br>FOR THE DISTRICT OF COLORADO<br>901 19TH STREET<br>DENVER, COLORADO 80294 | FILED<br>U.S. DISTRICT COURT<br>DISTRICT OF COLORADO<br><br>24 AUG 29 PM 3:45 |
| Plaintiffs:<br>**JASON HAUBENREISER, *PRO SE***<br>**DANIEL K. MILLER L/CPL USMC (RET), *PRO SE***<br><br>v.<br><br>Defendants:<br>**CITY AND COUNTY OF DENVER;**<br>**DENVER POLICE DEPARTMENT;**<br>**LIEUTENANT JAMES COSTIGAN;**<br>**MARY J. DULACKI;**<br>**OFFICER INVOLVED #1 [FIRST NAME, LAST NAME];**<br>**OFFICER INVOLVED #2 [FIRST NAME, LAST NAME]** | ▲COURT USE ONLY▲ |
| Party w/o Attorney:<br>Jason Haubenreiser *Pro Se*<br>1955 Ulster St. #452<br>Denver, CO 80220<br>Phone Number: 720-272-8457<br>E-mail: Jhauben@gmail.com<br><br>Daniel K. Miller, L/Cpl USMC (RET), *Pro Se*<br>1950 Trenton Street #114,<br>Denver, CO 80220<br>Phone Number: 682-404-2412<br>E-mail: aar4ag@gmail.com | **Case No.:**<br><br>**Division:** |
| COMPLAINT OF SEVERE VIOLATIONS OF PROFESSIONAL DUTY OF CARE: A PATTERN OF WILLFUL INDIFFERENCE; GROSS AND SYSTEMATIC NEGLIGENCE; FAILURE TO PROTECT; WRONGFUL ARRESTS; CONSTITUTIOINAL VIOLATIONS OF FIRST, SECOND, FOURTH, AND FOURTEENTH AMENDMENTS; AND THE AMERICANS WITH DISABLITIES ACT | |

COMPLAINT AND JURY DEMAND

Plaintiffs Jason Haubenreiser and Daniel K. Miller ("Plaintiffs"), representing themselves *pro se*, file this Complaint against Defendants City and County of Denver, Denver Police Department, Lieutenant James Costigan, Mary J. Dulacki, Officer to Be Identified. #1 [ First Name Last Name], and Officer to Be Identified #2 [First Name Last Name] ("Defendants"), and state as follows:

I. JURISDICTION AND VENUE

1. Jurisdiction: This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the case arises under the laws of the United States, specifically 42 U.S.C. § 1983, and under 28 U.S.C. § 1367, which grants supplemental jurisdiction over related state law claims.

2. Venue: Venue is proper in this District under 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred in the City and County of Denver, Colorado, and the Defendants are subject to personal jurisdiction in this District.

## II. PARTIES

3. Plaintiff Jason Haubenreiser, *Pro se*: An individual residing at 1955 Ulster St., #452, Denver, CO 80220, who has been subjected to repeated threats, harassment, physical assaults, and gross negligence by the Defendants. Jason owns and operates a vending company, a business that requires him to carry significant amounts of cash, and for which he should be able to rely on his legal right to carry a concealed firearm for personal and business security. The inability to feel safe in his own home, constant fear of criminal activity, and the severe state of fight or flight due to the Defendants' actions have severely exacerbated his pre-existing PTSD and other mental health conditions, impacting his daily life, overall health, safety, and ability to work as confirmed by statements and examinations by his doctors.

4. Plaintiff Daniel K. Miller, L/Cpl USMC (RET), *Pro Se*: An individual residing at 1950 Trenton Street #114, Denver, CO 80220. Mr. Miller has experienced a pervasive lack of police response to serious and life-threatening crimes, leading to a daily struggle to ensure his safety and well-being. The rampant crime and violence in his area, coupled with the Denver Police Department's repeated failures to respond, have severely impacted his daily life, health, safety, and enjoyment of his home. Mr. Miller, already suffering from PTSD and other related conditions, is unable to feel safe in his own dwelling and lives in a constant state of fear and anxiety.

5. Defendant City and County of Denver: A municipal corporation organized under the laws of the State of Colorado, responsible for the actions of the Denver Police Department and its employees.

6. Defendant Denver Police Department: A law enforcement agency within the City and County of Denver, responsible for the conduct of its officers.

7. Defendant Lieutenant James Costigan: An officer in the command structure of the Denver Police Department, assigned to Police District Two, who was directly involved in the events described herein and who failed to protect Plaintiffs despite being made aware of the ongoing threats and criminal activities in the area even after several very serious emails and written notices of officer misconduct, open and notorious allegations of payoffs made of city officials, and the desperate pleas of multiple residents for police to do something, anything.

8. Defendant Mary J. Dulacki: An official in the concealed carry department responsible for the wrongful revocation of Plaintiff Haubenreiser's concealed carry permit. Despite being provided with substantial evidence by Plaintiff Haubenreiser, including medical notes, videos, and references that demonstrated the extreme danger he faced daily to his life and safety, and his continued need for a CCW permit, Dulacki ignored this evidence and arbitrarily revoked his permit. Furthermore, Plaintiff Haubenreiser, on multiple occasions, specifically, politely, and extremely professionally requested a final formal letter of disposition or some formal notice indicating that the decision to revoke the permit would stand so that he could file an administrative appeal in time. Despite these repeated requests, Dulacki failed to provide any formal response, leaving Plaintiff Haubenreiser in a precarious position, both legally and personally based only on Ms. Dulacki's personal prejudices, subjective observations, and abuse of her position.

9. Defendant Officer to Be Identified #1 [First Name Last Name]: An individual employed as a police officer by the Denver Police Department, acting under color of state law, illegally and negligently failed or ignored their duties, even after given detailed videos, evidence, multiple witnesses, and other information needed to identify criminal elements reported repeatedly by

plaintiffs. Instead of assisting victims and apprehending dangerous individuals, the officer maliciously, callously, and illegally refused to respond, intimidated and harassed plaintiffs for calling, and cultivated an environment where criminals operated with impunity and knowledge that nothing would be done.

10. Defendant Officer to Be Identified #2 [First Name Last Name]: An individual employed as a police officer by the Denver Police Department, acting under color of state law, illegally and negligently failed or ignored their duties, even after given detailed videos, evidence, multiple witnesses, and other information needed to identify criminal elements reported repeatedly by plaintiffs. Instead of assisting victims and apprehending dangerous individuals, the officer maliciously, callously, and illegally refused to respond, intimidated and harassed plaintiffs for calling, and cultivated an environment where criminals operated with impunity and knowledge that nothing would be done even going so far as to encourage known criminals in their illegal and dangerous activities.

## III. FACTUAL ALLEGATIONS

Plaintiff Jason Haubenreiser:

11. Failure to Protect: Over the past two years, Plaintiff Haubenreiser has made approximately 100 calls to both 911 emergency and non-emergency numbers, reporting serious and escalating threats to his safety and life and to that of other residents at the property where he lives. These threats included active shooters, multiple gunshots, neighbors brandishing weapons, break-ins, vandalism, rampant and completely unchecked parties which became out of control and devolved in to chaos and violence, incidents of severe domestic violence where police never even responded and victims were left to fend for themselves, even after multiple calls by multiple residents and even security officers, and explicit threats of violence. Despite Plaintiff providing video evidence, witness testimony, and detailed reports during each of these calls, the Denver Police Department, including Lieutenant James Costigan, consistently failed to respond appropriately or take meaningful action.

12. Ignored Evidence and Warnings: Plaintiff Haubenreiser repeatedly warned the Denver Police Department, through phone calls, emails, and in-person meetings, about the dangerous activities occurring in his neighborhood. This included reporting neighbors who were modifying firearms by shaving off serial numbers and drilling third holes for select-fire capabilities. Plaintiff Haubenreiser also provided video evidence of these illegal activities and even engaged with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) to discuss the potential federal violations. However, the Denver Police Department ignored these warnings and failed to take necessary actions to investigate or intervene.

13. Permitting Criminal Activity: The Denver Police Department's negligence extended to allowing known gang members to engage in criminal activities with impunity. On June 15, 2024, the police granted explicit permission to a gang member to climb balconies to access apartments, despite this individual having been reported for breaking into apartments, making threats, and other criminal activities. This gang member had previously threatened to rape a female neighbor who had complained about their behavior. The police's allowance of such dangerous conduct directly endangered the lives of residents, including Plaintiff Haubenreiser.

14. Assault and Resulting Injuries: On May 28th, 2024, Plaintiff Haubenreiser was violently assaulted by a gang member he had previously reported to the police multiple times with evidence of weapons, threats, witnesses, break-ins, etc. This assault resulted in severe physical injuries, including a traumatic brain injury (TBI), a broken jaw, and what doctors think was a possible stroke.

Plaintiff Haubenreiser was hospitalized for over a week due to the severity of his injuries. Despite Plaintiff providing video evidence and multiple witnesses corroborating the assault, the Denver Police Department failed to take appropriate action against the assailant before the assault which was previously threatened, and these threats made known to police. This gross negligence further exacerbated Plaintiff Haubenreiser's PTSD and mental health conditions, leaving him in a constant state of fear and anxiety, unable to feel safe in his own home.

15. Gross Negligence and Systemic Failures: The Defendants' gross negligence is further evidenced by the following incidents, which occurred at Plaintiff Haubenreiser's residence and were reported to the police, but were either ignored or inadequately addressed:
  - Child Fatalities: Multiple children died on the property under suspicious circumstances. Despite the severity of these incidents, the Denver Police Department failed to conduct thorough investigations or hold anyone accountable.
  - SWAT Responses: The property has been the site of multiple SWAT team responses, including a barricade situation involving a suspect who had killed several individuals. Despite these dangerous incidents, the police failed to increase security or take preventive measures.
  - Outstanding Warrants: The property harbors individuals with outstanding warrants, many of whom have been reported by Plaintiff Haubenreiser. The police's failure to act on these reports allowed known criminals to remain in the vicinity, posing a constant threat to residents.
  - Unchecked Incidents of Domestic Violence: The property has witnessed numerous, very severe, domestic violence incidents, many of which were reported by Plaintiff Haubenreiser and others. In several particularly egregious instances, despite clear evidence of severe domestic violence, weapons, etc., the police failed to intervene, leaving the victim and plaintiffs in grave danger.

16. Hostile and Dangerous Environment: Plaintiff Haubenreiser and other residents, including multiple neighbors, repeatedly reported the dangerous and criminal activities of the individuals who eventually assaulted Plaintiff Haubenreiser. These neighbors, who falsely accused Plaintiff Haubenreiser leading to his wrongful arrest, had been involved in a series of criminal acts, including:
  - Threatening Plaintiff Haubenreiser with Knives and Razors: In the halls and common areas, these neighbors would brandish weapons, attempting to intimidate and ambush Plaintiff Haubenreiser.
  - Poisoning Attempts: They poured substances under Plaintiff Haubenreiser's door to poison his service animals.
  - Vandalism: They repeatedly spit onto Plaintiff Haubenreiser's balcony, broke bottles on his property, and engaged in other acts of vandalism.
  - Serious Threats: Plaintiff Haubenreiser knew these neighbors were armed and posed a significant threat to his life. Despite video evidence, multiple calls to police, and clear indications of imminent danger, the Denver Police Department failed to take any action to protect Plaintiff Haubenreiser.

17. Open and Notorious Criminal Enterprises: The property has become a hub for various criminal enterprises that operate openly and notoriously, with full knowledge of the Denver Police Department:
  - Chop Shop in Underground Garage: A gang-operated chop shop was openly operating in the underground garage of the property. Residents, including Plaintiff Haubenreiser, reported this criminal activity, which involved the dismantling and illegal sale of stolen vehicles. Despite these reports, the police failed to take any action to shut down this operation, allowing it to continue unchecked.
  - Prostitution and Drug Dealing: The premises were also known for rampant prostitution and drug dealing, both of which occurred openly and with impunity. Despite the clear and ongoing

nature of these illegal activities, and despite multiple reports from residents, the Denver Police Department did nothing to address or curtail these activities.

18. Bullets Through Apartments: The dangerous environment was further underscored by the fact that several of Plaintiff Haubenreiser's neighbors had bullets fired through their apartments. These incidents were reported to the police, but no substantial action was taken to investigate or ensure the safety of the residents. The police's inaction contributed to the increasing lawlessness and fear among the community members.

19. Rampant Break-Ins and Property Damage: The property has been plagued by rampant break-ins into cars and apartments, with doors being kicked in or broken off their hinges. Plaintiff Haubenreiser has provided videos showing the chop shop in the garage and the damage to property, but the police have failed to take any meaningful action to address these ongoing crimes.

20. Chaotic and Dangerous Pool Parties: Almost every weekend, and specifically on March 31, 2024, the property was the site of an extremely chaotic and dangerous pool party, where individuals were firing weapons in the air, setting off fireworks, playing music at decibel levels of 140+Db (City limit is 55Db), breaking glass bottles, stoking raging bonfires and open flames in trashcans, throwing furniture into the pool, and threatening any residents who tried to ask them to stop. When the police were called to the scene, they simply looked and then, incredulously, walked away without intervening and allowing the situation to escalate. Even property management has been threatened with their lives, and their property has been vandalized or damaged, yet the police did nothing to protect them or the residents. Video footage of the police walking away without taking any action is available at:

## https://youtu.be/ZTK4d5PH3_k.

21. Open Flames and Fire Hazards: The property has also seen rampant fire hazards, with people grilling and creating open flames that reached three to four feet high. These dangerous activities were reported to the police, but no actions were taken to mitigate the risks or prevent potential fires.

22. Communication with Authorities and Management: Plaintiff Haubenreiser, along with several neighbors, had serious email communications and held meetings with property management, police officers, including Lieutenant James Costigan, and city officials to discuss the ongoing threats and criminal activity. These communications included detailed evidence of the crimes, including witness statements and videos. Despite these efforts, the police and management failed to address the situation, leaving Plaintiff Haubenreiser and other residents in a constant state of fear.

23. Police Inaction at Dangerous Location: The location of Plaintiff Haubenreiser's residence is known for being exceedingly dangerous. There is a ShotSpotter device installed on the premises due to the frequency of gunshots. Despite this, the Denver Police Department consistently failed to respond adequately to serious incidents. In one instance, police were called to an out-of-control party at the pool, where gunshots were fired and music was blaring at over 140 decibels all day and night. When the police arrived, they simply turned away and refused to intervene, leaving the situation to escalate.

24. Wrongful Arrest: On July 7, 2024, Plaintiff Haubenreiser was wrongfully arrested by Defendants <u>without</u> probable cause after being falsely accused by the criminal neighbors. This arrest was carried out despite clear evidence, including video footage, showing that Plaintiff

Haubenreiser was not a threat, but in fact, the neighbors had ben complained about for weapons, frequent violent parties at their residence, etc. and were known to management to be a danger and were on notice of eviction proceedings. The arrest was a retaliatory act by the police, who had failed to protect Plaintiff Haubenreiser from the very threats he had reported over and over. The judge at the initial appearance was dismayed and frustrated at the lack of any probable cause for the plaintiffs arrest, and the District Attorney declined to file any charges, further demonstrating the lack of legal justification for the arrest.

25. Wrongful Revocation of CCW Permit: Following the wrongful arrest, Defendant Mary J. Dulacki unjustly revoked Plaintiff Haubenreiser's concealed carry permit, leaving him defenseless against ongoing threats. This revocation was arbitrary, lacked due process, and was based on unfounded fears and prejudice rather than any substantial evidence. To the contrary, plaintiff Haubenreiser provided vast quantities of evidence to Mary J. Dulacki, including videos, notes from doctors attesting to Plaintiff Haubenreiser's reasonable and reserved nature despite the extreme threats to his life, witness statements, multiple references, and even proof of the extreme danger plaintiff faced from active threats to his life. Despite this, Dulacki disregarded the evidence and revoked the permit, further endangering and violating the rights of Plaintiff Haubenreiser. Additionally, Plaintiff Haubenreiser specifically, politely, and extremely professionally requested a final formal letter of disposition, or some formal notice that the decision would stand despite the evidence provided, so he could file an administrative appeal in time. Despite multiple requests, Dulacki failed to provide any formal response, leaving Plaintiff Haubenreiser without the necessary documentation to appeal the decision promptly.

26. Impact on Profession and Business Operations: Plaintiff Haubenreiser owns and operates a vending company, a business that requires him to carry significant amounts of cash to and from various locations. Given the high-risk nature of this enterprise, Plaintiff Haubenreiser has historically been able to rely on his ability to legally carry a concealed firearm for personal security and the protection of his business assets, not only under Colorado law but also by recent Federal rulings, and most importantly, The Constitution. The wrongful and arbitrary revocation of Plaintiff Haubenreiser's CCW permit directly impairs his ability to safely conduct his business operations, exposing him to significantly increased risk of robbery and violence.

27. Increased Risk to Business Assets: The revocation of Plaintiff Haubenreiser's CCW permit, unjustly and without cause, places his business and personal safety at significantly greater risk. Plaintiff Haubenreiser's inability to conceal carry while conducting his business operations not only endangers his life but also jeopardizes the financial security of his company. This wrongful action by the Defendants has thus caused significant harm, not only to Plaintiff Haubenreiser's personal safety but also to his livelihood.

28. Economic and Reputational Damages: As a direct result of the wrongful revocation of his CCW permit, Plaintiff Haubenreiser has suffered economic losses due to increased security costs, potential loss of business, and reputational damage within the industry. Clients who were aware of Plaintiff Haubenreiser's inability to legally carry a firearm may have chosen alternative services, leading to a quantifiable loss in income.

29. Punitive Damages Justification: The Defendants' actions were not only wrongful but also grossly negligent and intentionally harmful, especially given plaintiff's emails to Ms. Dulacki, the vast amount of evidence provided, and the non-economic damages associated with such a stressful event; this unjust action warrants the imposition of punitive damages. The revocation of Plaintiff Haubenreiser's CCW permit, knowing it would further erode his safety and living situation given the threats made to his life in addition to the ability to safely conduct his business, constitutes

willful and malicious conduct that should be punished to deter future misconduct and arbitrary, prejudiced decisions which affect real people.

30. Intentional Interference with Business Relations: The Defendants' actions have interfered with Plaintiff Haubenreiser's ability to conduct his business, causing harm to his professional relationships and operations. By revoking his CCW permit, the Defendants have directly and intentionally impacted Plaintiff Haubenreiser's ability to be able to secure his business assets, which is integral to the operation of his enterprise.

31. Violation of Second and Fourteenth Amendment Rights: The arbitrary revocation of Plaintiff Haubenreiser's CCW permit, coupled with the potentially broader implications on his firearm rights and the impact on his profession, constitutes a violation of his Second Amendment right to bear arms and his Fourteenth Amendment right to due process. The Defendants' actions have effectively placed Plaintiff Haubenreiser at risk of losing his fundamental rights without proper cause or legal justification. This is exemplified by the emails sent to Ms. Dulacki, professionally and with extremely politeness, requesting some sort of formal disposition, to no avail.

32. ADA Violations: During the wrongful arrest, Plaintiff Haubenreiser, who suffers from PTSD, anxiety, and other mental health conditions, was separated from his service animal. These conditions were known to police. This illegal separation exacerbated his disabilities, causing significant emotional, mental, and physical harm. The police's actions violated the Americans with Disabilities Act (ADA), which requires reasonable accommodations for individuals with disabilities during interactions with law enforcement.

33. Pattern of Harassment and Retaliation: The actions of the Defendants are part of a broader pattern of harassment and retaliation against Plaintiff Haubenreiser for his persistent complaints and attempts to hold the police accountable. This pattern includes the deliberate indifference to the threats against him, the wrongful arrest, and the baseless revocation of his CCW permit.

34. Ongoing Danger and Fear: The Defendants' failure to act on Plaintiff Haubenreiser's credible reports of criminal activity and their complicity in allowing gang members and other criminals to operate with impunity have left Plaintiff Haubenreiser in a constant state of fear for his life. He continues to face threats from these individuals, who know that the police will not intervene on his behalf.

35. Widespread Criminal Activity and Public Awareness: The criminal activities and unsafe conditions at Plaintiff Haubenreiser's residence are not isolated incidents but are part of a broader pattern of neglect and inaction by both the police and property management. Similar apartment complexes in Denver have faced public scrutiny and news coverage due to uninhabitable conditions, severe crime metrics, and the failure of authorities to take any action. This widespread issue has led to multiple complexes being shut down. The Defendants' inaction in Plaintiff Haubenreiser's case is consistent with this broader trend of systemic failure to protect residents from dangerous living conditions and criminal activities.

Plaintiff Daniel K. Miller:

36. Failure to Protect: Plaintiff Miller has also experienced a pervasive lack of police response to serious and life-threatening crimes. He has made numerous calls to the Denver Police Department, reporting incidents that posed significant dangers to his safety and well-being, including violent altercations, burglaries, and other criminal activities in and around his residence. Despite the

severity of these incidents, the police repeatedly failed to respond or take appropriate action, leaving Plaintiff Miller and his neighbors vulnerable to ongoing threats.

37. Impact on Daily Life and Health: The rampant crime and violence in Plaintiff Miller's area, coupled with the Denver Police Department's repeated failures to respond, have severely impacted his daily life, health, safety, and enjoyment of his dwelling. The constant fear of crime, the knowledge that police would not respond in times of need, and the inability to feel secure in his own home have caused Plaintiff Miller significant emotional distress, anxiety, and fear. These conditions have exacerbated his PTSD, and other conditions.

38. Ignored Evidence and Warnings: Similar to Plaintiff Haubenreiser, Plaintiff Miller provided substantial evidence to the Denver Police Department regarding the dangerous activities in his vicinity, including reports of ongoing criminal activity and threats to his safety. Despite these concerted and non-stop efforts, the police failed to act, exacerbating the risks faced by Plaintiff Miller and his neighbors.

39. Hostile and Dangerous Environment: Plaintiff Miller, like Plaintiff Haubenreiser, has been subjected to a hostile and dangerous living environment. Criminal activities, including violent altercations, continue to occur unchecked, despite repeated calls for police intervention. The Defendants' inaction has left Plaintiff Miller and other residents in a constant state of fear for their safety. Plaintiff Miller has even been physically assaulted and threatened multiple times.

40. Incident of Domestic Violence: One particularly egregious incident involved a violent domestic dispute at Plaintiff Miller's residence, which was reported to the police by security guards. Despite the seriousness of the situation and the clear danger involved, no police officers responded to the scene, leaving the residents, including Plaintiff Miller, in significant danger. This incident exemplifies the Defendants' gross negligence and failure to protect residents in dangerous situations. Not responding put the security guards at significant risk to their lives and safety. Multiple calls from residents and security about a deadly domestic violence incident in progress demands a police response.

41. Pattern of Neglect and Indifference: The Defendants' failure to respond to Plaintiff Miller's calls for help is part of a broader pattern of neglect and indifference that has characterized their approach to policing in this community. The systemic failures of the Denver Police Department have placed Plaintiff Miller at significant risk, with ongoing threats to his safety going unaddressed.

42. Ongoing Danger and Fear: The Defendants' failure to act on Plaintiff Millers's credible reports of criminal activity and their complicity in allowing gang members and other criminals to operate with impunity have left Plaintiff Miller in a constant state of fear for his life. He continues to face threats from these individuals, who know that the police will not intervene on his behalf.

43. Widespread Criminal Activity and Public Awareness: The criminal activities and unsafe conditions at Plaintiff Millers residence are not isolated incidents but are part of a broader pattern of neglect and inaction by both the police and property management. Similar apartment complexes in Denver have faced public scrutiny and news coverage due to uninhabitable conditions, severe crime metrics, and the failure of authorities to take any action. This widespread issue has led to multiple complexes being shut down. The Defendants' inaction in Plaintiff Millers case is consistent with this broader trend of systemic failure to protect residents from dangerous living conditions and criminal activities.

Failure to Protect and Police Inaction on Critical Incidents:
44. On March 31, 2024, at approximately 2232 hours, Plaintiff Miller observed a large, very loud party in the pool area of his residence. The party involved multiple intoxicated individuals and posed a significant disturbance to the community. Plaintiff Miller witnessed two police officers arrive on the scene, turn on their lights, and proceed to the pool common area. However, after a brief presence, the officers simply walked back to their car, turned off the lights, and left the premises without taking any action to disperse the crowd or address the disturbance. This blatant disregard for the situation allowed the dangerous environment to persist, further exacerbating Plaintiff Miller's anxiety and fear. Video evidence of this incident is available at the following link: (https://youtu.be/ZTK4d5PH3_k?si=IQ-PHFQkhU-x_m_).

Tampering with Condemned Signage:
45. On November 10, 2023, Plaintiff Miller observed, via video evidence, that the signage indicating a condemned area of the property had been removed from a door. Plaintiff Miller promptly reported this tampering to the Denver Police Department (DPD). Shortly after his report, the sign reappeared in its original location, raising concerns about possible collusion or negligence by those responsible for enforcement. Despite the seriousness of this tampering, the DPD dismissed Plaintiff Miller's report, stating that "nothing can be done." Video evidence supporting this claim is available at the following link: (https://youtu.be/3OZsw_pBE44?si=cRCv4hP0Y2Fyle-B).

Loud Parties and Failure of Police to Respond:
46. On December 12, 2023, Plaintiff Miller documented loud parties occurring on multiple balconies after 2200 hours on a Sunday night. Despite the time and the clear violation of noise ordinances, Plaintiff Miller's multiple calls to the DPD Non-Emergency line and LoneStar Protective went largely unanswered. He called the DPD twice and LoneStar Protective approximately nine times. The lack of response to this ongoing disturbance further highlights the systemic failure of the DPD to address and mitigate public nuisances and criminal activities in the area. Video evidence of this incident can be found at the following link: (https://youtu.be/9ssjah8b9YU?si=sMSq8clQ7q8580Dg).

Failure to Respond to Serious and Violent Domestic Assaults:
47. On August 11, 2024, Plaintiff Miller was alerted by VERY LOUD yelling and what sounded like banging on walls near his residence. Upon checking the live camera feed outside his door, Plaintiff Miller witnessed a domestic assault taking place. He immediately called 911 and contacted Oculus Security. While Oculus Security responded, the police never arrived, despite the urgency and severity of the situation. Even after Oculus Security informed 911 of the ongoing assault, the DPD failed to respond, and Plaintiff Miller never received an SMS notification from Denver PSAP indicating that the call was either resolved or closed. This complete failure to respond to an imminent threat to safety underscores the gross negligence of the DPD. Video evidence of this incident is available at the following link: (https://youtu.be/Ae_eokaWJAo?si=ybXLd3-inXQGP-7b).

IV. CLAIMS FOR RELIEF

Plaintiff Jason Haubenreiser and Plaintiff Daniel K. Miller:

First Claim for Relief: Violation of Fourth Amendment Rights (42 U.S.C. § 1983 - Wrongful Arrest) (Against All Defendants)

48. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

49. The Defendants, acting under color of state law, wrongfully arrested Plaintiff Haubenreiser without probable cause, in violation of his Fourth Amendment right to be free from unreasonable seizures.

50. The wrongful arrest caused Plaintiff Haubenreiser severe emotional distress, humiliation, and physical harm, including the exacerbation of his PTSD and other mental health conditions.

51. Precedent: *Terry v. Ohio, 392 U.S. 1 (1968)*, establishes that an arrest without probable cause is a violation of the Fourth Amendment. The facts of this case closely mirror the wrongful arrest in *Ybarra v. Illinois, 444 U.S. 85 (1979)*, where the Court held that the mere presence at a location cannot constitute probable cause.

Second Claim for Relief: Violation of Fourteenth Amendment Rights (42 U.S.C. § 1983 - Due Process - Wrongful Revocation of CCW Permit)
(Against All Defendants)

52. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

53. The Defendants violated Plaintiff Haubenreiser's Fourteenth Amendment right to due process by revoking his concealed carry permit without providing adequate notice, evidence, or a fair hearing. This arbitrary action has broader implications on Plaintiff Haubenreiser's ability to exercise his Second Amendment rights, subjects him to potential future legal challenges without due process, and directly impacts his ability to safely conduct his business operations as the owner of an ATM company.

54. Precedent: The Supreme Court in *Mathews v. Eldridge, 424 U.S. 319 (1976),* emphasized that due process requires a fair procedure before depriving an individual of a protected interest. The Defendants' failure to provide such a procedure in revoking Plaintiff Haubenreiser's CCW permit constitutes a clear violation of his due process rights. Especially given the request for a formal disposition so that plaintiff could file a timely appeal, the violation of due process was systematic and egregious.

Third Claim for Relief: Violation of the Americans with Disabilities Act (ADA)
(Against All Defendants)

55. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

56. The Defendants violated the ADA by failing to provide reasonable accommodations during Plaintiff Haubenreiser's arrest, including separating him from his service animal, which exacerbated his disabilities and caused significant emotional and physical harm.

57. Precedent: *Tennessee v. Lane, 541 U.S. 509 (2004),* confirms that the ADA requires public entities to accommodate individuals with disabilities, including during law enforcement interactions. The Defendants' actions violated these requirements.

Fourth Claim for Relief: Negligence
(Against All Defendants)

58. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

59. The Defendants owed Plaintiffs a duty of care to protect them from foreseeable harm, particularly after being made aware of the ongoing threats to their safety and the criminal activity in their vicinity.

60. The Defendants breached this duty by failing to respond adequately to Plaintiffs' reports of criminal activity and threats, by permitting gang members and other criminals to engage in illegal activities such as climbing balconies to access apartments, and by failing to prevent the foreseeable harms to Plaintiffs which harms actually manifested.

61. Precedent: In *City of Fort Morgan v. Johnson, 78 P.3d 172 (Colo. App. 2003)*, the court held that municipalities can be held liable for failing to protect individuals when there is a special relationship or specific assurance of protection. The Defendants' negligence in this case falls within this doctrine.

Fifth Claim for Relief: Intentional Infliction of Emotional Distress (IIED)
(Against All Defendants)

62. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

63. The Defendants' actions were extreme and outrageous, intentionally causing Plaintiffs severe emotional distress. This includes allowing known gang members and other criminals to terrorize the community, wrongfully arresting Plaintiff Haubenreiser, and revoking his CCW permit without cause, leaving him defenseless.

64. Precedent: In *Rugg v. McCarty, 476 P.2d 753 (Colo. 1970)*, the Colorado Supreme Court recognized that extreme and outrageous conduct that intentionally or recklessly causes severe emotional distress can give rise to a claim for IIED. The Defendants' conduct in this case meets this standard.

Sixth Claim for Relief: Civil Conspiracy
(Against All Defendants)

65. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

66. The Defendants conspired together to deprive Plaintiffs of their constitutional rights and to cover up their failures to protect them. This conspiracy includes the coordinated effort to wrongfully arrest Plaintiff Haubenreiser, revoke his CCW permit, and permit gang members and other criminals to engage in illegal activities without fear of police intervention.

67. Precedent: In *Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970)*, the Supreme Court held that a civil conspiracy to deprive an individual of their constitutional rights can form the basis of a § 1983 claim. The coordinated actions of the Defendants in this case constitute such a conspiracy.

Seventh Claim for Relief: Gross Negligence
(Against All Defendants)

68. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

69. The Defendants' actions and omissions, including but not limited to their failure to respond to Plaintiffs' repeated calls for help, allowing criminal activity to flourish unchecked, and ignoring

evidence of imminent danger, constitute gross negligence. This gross negligence was a direct and proximate cause of Plaintiffs' injuries.

66. Precedent: Gross negligence, which is a more severe form of negligence indicating a reckless disregard for the safety of others, can be grounds for enhanced damages. The Defendants' conduct here rises to the level of gross negligence as recognized in *Harris v. The Ark, 810 P.2d 226 (Colo. 1991)*.

Eighth Claim for Relief: Failure to Train and Supervise
(Against City and County of Denver and Denver Police Department)

70. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

71. The City and County of Denver and the Denver Police Department failed to adequately train and supervise their officers in handling situations involving threats of violence, criminal activity, and interactions with disabled individuals, including how to properly respond to 911 calls and reports of ongoing criminal activity.

72. This failure to train and supervise directly contributed to the wrongful arrest, the failure to protect Plaintiffs, and the wrongful revocation of Plaintiff Haubenreiser's CCW permit.

73. Precedent: The U.S. Supreme Court in *City of Canton v. Harris, 489 U.S. 378 (1989)*, established that municipalities can be held liable under § 1983 for failing to train employees when the failure to train amounts to deliberate indifference to the rights of individuals.

Ninth Claim for Relief: Retaliation in Violation of First Amendment Rights (42 U.S.C. § 1983)
(Against All Defendants)

74. Plaintiffs incorporate by reference

all preceding paragraphs as if fully set forth herein.

75. The Defendants retaliated against Plaintiffs for exercising their First Amendment rights, including their right to petition the government for redress of grievances. This retaliation took the form of wrongful arrest, harassment, and the wrongful revocation of Plaintiff Haubenreiser's CCW permit.

76. Precedent: In *Hartman v. Moore, 547 U.S. 250 (2006)*, the Supreme Court recognized that government officials can be held liable for retaliatory actions taken in response to an individual's exercise of their First Amendment rights.

Tenth Claim for Relief: Violation of Second Amendment Rights (42 U.S.C. § 1983)
(Against All Defendants)

77. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

78. The Defendants, acting under color of state law, violated Plaintiff Haubenreiser's Second Amendment rights by arbitrarily revoking his CCW permit, which not only deprived Plaintiff Haubenreiser of his right to carry a concealed weapon for self-defense but also placed him at risk of broader restrictions on his right to own and possess firearms, and directly impacted his ability to conduct his business operations as the owner of an ATM company.

79. The wrongful revocation, if recorded in law enforcement databases or flagged during background checks, could subject Plaintiff Haubenreiser to ongoing legal challenges and unjustified scrutiny, thus infringing upon his constitutionally protected rights and causing significant economic harm.

80. Precedent: In *District of Columbia v. Heller, 554 U.S. 570 (2008)*, the Supreme Court held that the Second Amendment protects an individual's right to possess a firearm for self-defense. The actions of the Defendants in this case undermine this fundamental right by imposing undue restrictions on Plaintiff Haubenreiser's ability to exercise his Second Amendment rights.

Eleventh Claim for Relief: Intentional Interference with Business Relations
(Against All Defendants)

81. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

82. The Defendants, through their wrongful actions, have intentionally interfered with Plaintiff Haubenreiser's business operations. The revocation of Plaintiff Haubenreiser's CCW permit has directly harmed his ability to conduct his ATM business, causing financial loss, reputational damage, and increased security costs.

83. Precedent: In *Westfield Dev. Co. v. Rifle Inv. Assocs., 786 P.2d 1112 (Colo. 1990)*, the Colorado Supreme Court recognized the validity of claims for intentional interference with business relations when there is evidence of wrongful acts intentionally designed to harm a business relationship. The Defendants' actions here satisfy the elements of this claim.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Jason Haubenreiser and Daniel K. Miller respectfully request that this Court enter judgment in their favor and against the Defendants, and award the following relief:

1. Compensatory damages in an amount to be determined at trial;
2. Punitive damages in an amount to be determined at trial;
3. Attorneys' fees and costs pursuant to 42 U.S.C. § 1988;
4. Pre- and post-judgment interest as permitted by law;
5. Declaratory and injunctive relief, including the reinstatement of Plaintiff Haubenreiser's CCW permit and orders requiring the Defendants to implement appropriate policies and training to prevent such misconduct in the future;
6. An order compelling the Defendants to cease any and all retaliatory actions against Plaintiffs;
7. An order requiring the Defendants to remove any records of the CCW revocation from databases that could impact Plaintiff Haubenreiser's rights to purchase, own, or possess firearms, and restore his ability to legally carry a concealed weapon for personal safety and business operations;
8. Punitive damages to punish the Defendants for their grossly negligent and malicious conduct, in an amount to be determined at trial;
9. Compensation for economic losses, including increased security costs, loss of income, reputational damage, attorneys fees (and time spent) in an amount to be determined at trial;
10. Any other relief this Court deems just and proper.

## VI. JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted this 29th day of August, 2024.

Jason Haubenreiser
1955 Ulster St., #452
Denver, CO 80220
720-272-8457
Jhauben@gmail.com
*Pro Se* Plaintiff

Daniel K. Miller, L/Cpl USMC (RET)
1950 Trenton Street #114
Denver, CO 80220
682-404-2412
Aar4ag@gmail.com

---

## X. CERTIFICATE OF SERVICE

I hereby certify that on 8/29/2024, a true and correct copy of this Complaint was served upon the Defendant via personal service and e-filing with the court.

## XI. VERIFICATION

I, Jason Haubenreiser and I, Daniel K. Miller, state and allege that the foregoing statements are true and correct to the best of my knowledge and belief.

Dated: 8/29/2024
Signed: Jason. Haubenreiser

*Jason Haubenreiser*

Dated: 8/29/2024
Signed: Daniel K. Miller, L/CPL USMC (RET)

*Daniel K. Miller*

## CERTIFICATE OF SERVICE

I hereby certify that on August 29th, 2024, a true and correct copy of the foregoing FORMAL COMPLAINT OF SEVERE VIOLATIONS OF PROFESSIONAL DUTY OF CARE: A PATTERN OF WILLFUL INDIFFERENCE; GROSS AND SYSTEMATIC NEGLIGENCE; FAILURE TO PROTECT; WRONGFUL ARRESTS; CONSTITUTIOINAL VIOLATIONS OF FIRST, SECOND, FOURTH, AND FOURTEENTH AMENDMENTS; AND THE AMERICANS WITH DISABLITIES ACT was filed with the Court and served via Colorado Courts E-Filing and that a courtesy copy was emailed to Defendant's counsel, registered agent, or by proper, lawful individual or substitute service at the following:

Issued by:
Jason. Haubenreiser
1955 Ulster St. #452
Denver, Colorado 80220
720-272-8457
Dated: 8/29/2024

Signed: *Jason Haubenreiser*

Daniel K. Miller, L/CPL USMC (RET)
1950 Trenton Street Apt. T114
Denver, CO 80220
682-404-2412
Dated: 8/29/2024

Signed: *Daniel K. Miller*


Issued to:
Denver City Attorney's Office
201 W. Colfax Ave., Dept. 1207
Denver, CO 80202

Denver Police Department
1331 Cherokee St.
Denver, CO 80204

Mary J. Dulacki
City and County of Denver
1331 Cherokee St.
Denver, CO 80204